Emily B. Goldberg, Esq. (EG8413)
Baher Azmy, Esq.
Kelly Lloyd, D.N.J.L. Civ. R. 101.1(h)
Mimi Huang, D.N.J.L. Civ. R. 101.1(h)
Jaclyn Ruocco, D.N.J.L. Civ. R. 101.1(h)
Tessa Kennedy, D.N.J.L. Civ. R. 101.1(h)
SETON HALL UNIVERSITY SCHOOL OF LAW
CENTER FOR SOCIAL JUSTICE
833 McCarter Highway
Newark, NJ 07102
(973) 642-8700

Edward Barocas, Esq. (EB 8251)
AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY
P.O. Box 32159
89 Market Street, 7th Floor
Newark, NJ 07101
(973) 642-2084

Attorneys for Plaintiff

| | |
|---|---|
| ROBERTO LIMA,<br><br>                    Plaintiff,<br><br>            v.<br><br>NEWARK POLICE DEPARTMENT, GARRY MCCARTHY, SAMUEL DEMAIO, LYDELL JAMES, JOSE ALICEA, MICHAEL LATORRE, JOHN DOE, JOHN ROE, employees of the Newark Police Department, ROGER IMHOF, ROMESH SUKHDEO, JOHN BREWINGTON, MARQUIS CARTER, and JOHN LOE 1 to 4, employees of the Essex County Prosecutor's Office (all defendants named in their individual and official capacities).<br><br>                    Defendants. | DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>**CIVIL ACTION NO. 08-426 (FSH)**<br><br>**SECOND AMENDED COMPLAINT**<br>**(First Substantive Amendment)** |

1

Plaintiff Roberto Lima, through his undersigned attorneys, for his complaint against Defendants, alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff, Roberto Lima, brings this civil rights action pursuant to 42 U.S.C. § 1983 and N.J.S.A. 10:6-1 et seq. for damages and other relief against Defendants, Newark Police Department ("NPD") and its officers and leaders Garry McCarthy, Samuel Demaio, Lydell James, Jose Alicea, Michael Latorre, John Doe, and John Roe who, while acting under color of state law, violated Mr. Lima's rights under the First and Fourth Amendments of the United States Constitution; Article I, Paragraphs 6 and 7 of the New Jersey State Constitution; and the New Jersey Reporter Shield Law.

2.      Plaintiff also brings claims pursuant to 42 U.S.C. § 1983 for damages and other relief against Lieutenant John Brewington, Detective Marquis Carter, Assistant Prosecutors Romesh Sukhdeo and Roger Imhof, and John Loe 1 through 4 (who are unidentified employees of the Essex County Prosecutor's Office) (the "prosecutor Defendants"). These defendants, while acting under color of law, participated in or advised the Newark Police Department and its officers to take actions that violated Mr. Lima's rights under the First and Fourth Amendment of the United States Constitution.

3.      This case arises out of a series of abusive law enforcement efforts to bully, intimidate and, finally, unlawfully arrest a member of the press and seize his property in order to prevent him from exercising his constitutional entitlement to report on a story that, while potentially embarrassing to the NPD, was of significant interest to the public.

4.      In August 2007, in a highly publicized case, three Newark college students were brutally murdered, execution-style, in the city. Press coverage of the tragedy reflected the

2

community's shock and dismay at the continuing scourge of violence that plagues the city, and also posed the question whether the city and its police force were effective at controlling crime.

5. Barely a month after these three murders, Mr. Lima – the editor of a local newspaper – and his staff discovered a dead body, alerted the police, and directed them to the scene. Upon arriving at the scene, Defendant Demaio ordered Mr. Lima not to publish in his newspaper any of the pictures of the crime scene that newspaper staff had taken. Defendant Demaio then escalated his reaction by physically seizing Mr. Lima's camera and electronic storage card and finally – despite Mr. Lima's agreement to turn over any pictures his staff had taken so long as he could retain copies for the newspaper – ordering Mr. Lima's arrest for his refusal to forfeit *all* originals and duplicates of the photographs his staff had taken. Defendant McCarthy participated in the NPD's unconstitutional actions by similarly directing or approving the unlawful arrest and the continued detention of Mr. Lima by NPD officers unless he agreed to turn over all pictures and duplicates, and by failing to properly train his officers or adopt policies necessary to avoid the unlawful conduct at issue. Defendants James, Latorre, and Alicea are NPD officers who carried out the unconstitutional commands of Defendants McCarthy and Demaio, including by detaining Mr. Lima at the station, and seizing his cellular phone and, eventually, the photographs at issue. Defendants took these actions without a judicial warrant, probable cause, or even exigent circumstances that would lawfully justify the seizure and arrest.

6. Defendant James and/or Defendant Demaio consulted members of the Essex County Prosecutor's office regarding what actions could be taken against Mr. Lima, including whether he could be arrested for refusing to turn over all of the photographs, and whether his photographs could be seized. One or more of the Prosecutor defendants advised that the NPD

3

was entitled to seize the photographs, and that Mr. Lima could be arrested for refusing to surrender all of his photographs.

7. Mr. Lima seeks relief in this Court not only to redress the wrongs done to him personally, but also to vindicate the rights of journalists throughout the country to do their important and constitutionally-protected job of gathering and reporting news free from police harassment, coercion, and abuse.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Mr. Lima's claims for violations of his federal constitutional rights, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (jurisdiction over federal constitutional claims). This Court has supplemental jurisdiction over Mr. Lima's state law claims, 28 U.S.C. § 1367(a), because these arise out of the same set of facts as the federal claims such that all claims herein form part of the same case or controversy.

9. Venue lies in this District pursuant to 28 U.S.C. § 1391(e), because a substantial part of the events giving rise to the claim occurred here.

## PARTIES

10. Plaintiff, Roberto Lima ("Mr. Lima"), resides in Livingston, New Jersey. Mr. Lima is the editor of the *Brazilian Voice*, a Portuguese-language newspaper published in Newark to report on issues of concern to the local Brazilian community.

11. Defendant NPD is the law enforcement agency of the City of Newark. Defendant Garry McCarthy is Director of the NPD. Defendant Samuel Demaio is Deputy Chief of the NPD. Defendant Michael Latorre is a Lieutenant with the NPD. Defendant Lydell James, Defendant Jose Alicea, and Defendants John Doe and John Roe are officers of the NPD.

12. Defendants John Brewington and Marquis Carter are investigators with the Essex County Prosecutor's Office. Defendants Roger Imhof and Romesh Sukhdeo are Assistant Prosecutors in the Essex County Prosecutor's Office. John Loe 1 through 4 are unknown employees of the Essex County Prosecutor's Office.

13. At all times mentioned herein, Defendants McCarthy, Demaio, James, Latorre, Alicea, Doe, and Roe were acting within the scope of their duties and employment, under color of state law, as police officers of the Newark Police Department, City of Newark, in the County of Essex, State of New Jersey.

14. At all times mentioned herein, Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 were acting under color of law as employees of the Essex County Prosecutor's Office. None of these defendants were acting in a prosecutorial role, but were assisting in a homicide investigation.

## FACTUAL ALLEGATIONS

15. On August 4, 2007, three college students were the victims of a brutal, execution-style murder in Newark. The shootings received national attention, including press coverage by the New York Times, USA Today, CNN, and National Public Radio, among other sources. Reaction among the public in Newark, in addition to grief and despair, included a march on City Hall to express anger at the city's leadership for ineffective crime control.

16. On September 6, 2007, a photographer for the *Brazilian Voice* was taking pictures on foot in the vicinity of the movie theater on Foundry Street in the Ironbound section of Newark. The photographer hoped to document the considerable amount of trash that had accumulated as a result of the Brazilian Day festivities held the previous weekend.

17.     During the course of his work, the photographer discovered the body of a deceased woman in a trash-strewn alleyway behind the theater.

18.     After stopping at a local convenience store to call his editor, Plaintiff Roberto Lima, the photographer then went to the offices of the *Brazilian Voice*. After making a backup copy of the pictures in the office, the two men returned to the location of the body with a third *Brazilian Voice* staff member. They did this in order verify the location of the body so that it could be accurately reported to the police.

19.     At the scene, the two *Brazilian Voice* staff members confirmed the location of the body of the deceased woman. Mr. Lima contacted Anthony Campos, Chief of the Newark Police Department, via text message, to alert him to the discovery. Mr. Lima, a recognized leader in the Newark- Brazilian community, had at that time an excellent relationship and regular contact with the NPD. While Mr. Lima contacted Mr. Campos, the two staff members took additional pictures.

20.     When Mr. Campos did not respond, Mr. Lima and the two staff members went to the police station to report what they had discovered. They stopped briefly along the way to make duplicates of the pictures the staff members had just taken, so as to preserve their work product.

21.     At the station, Mr. Lima spoke with Defendant Latorre, identified himself and his staff members as employees of the *Brazilian Voice*, and reported what had been discovered. After notifying the police, the three journalists returned to the scene with several officers to help the officers locate the body.

22. Upon arriving at the scene, the photographer who found the body aided police in directing traffic and setting up caution tape, while the remaining officers were directed to the body.

23. Soon after the journalists directed the police officers to the body, the Deputy Chief of the NPD, Defendant Samuel Demaio, arrived in a police SUV, wearing plain clothes. At no time during his interaction with Mr. Lima did Defendant Demaio appear interested in learning about the victim or the crime. Upon his arrival, he ignored a junior officer who attempted to explain what the police had learned about the incident up to that point. Instead, Defendant Demaio demanded to be directed to meet the person who found the body.

24. When he was introduced to the photographer, Defendant Demaio commenced an intimidating interrogation. He abruptly asked, "Are you legal?" Upon receiving no reply (the photographer does not speak English), Defendant Demaio asked, "Do you have a green card?" Defendant Demaio's actions appeared to have been aimed at intimidating and silencing the journalists assembled there. His actions were also obviously in violation of an Attorney General's Directive that specifically prohibits police officers from inquiring into the immigration status of victims and witnesses to crimes. After investigating the matter during the fall of 2007, the Office of the Attorney General found that Defendant Demaio had violated the Directive and referred the matter to the NPD in order to determine what discipline should be imposed.

25. Because the photographer did not speak English, Mr. Lima intervened into Defendant Demaio's questioning and asked him why he was inquiring about the photographer's immigration status given that the three journalists were only there to assist with the NPD's investigation.

26. Defendant Demaio then asked if the journalists had taken any photographs. They answered that they had. Defendant Demaio then stated to the three journalists, "You're not printing any of this." He then instructed another officer, Defendant Lydell James, to physically confiscate the camera with which *Brazilian Voice* staff had first photographed the body and crime scene. The officers had no warrant to seize the camera and had no reason to suspect, let alone probable cause to believe, that the journalists were involved in any unlawful conduct. To the contrary, the journalists had dutifully cooperated with the investigation throughout the entire process.

27. Defendant James nevertheless snatched the camera from one of the journalists. Defendant James attempted, but failed, to remove the memory card from the camera. He then handed the camera to Defendant Demaio, who, after he too failed to remove the memory card, threw the camera into the backseat of his police vehicle.

28. The police escorted the three journalists back to the police station, where Mr. Lima and the photographer were told to give statements regarding the discovery. The third *Brazilian Voice* staff member was permitted to leave the precinct without giving a statement.

29. After he had had given his statement, Mr. Lima asked for the camera to be returned to him. Detective Carlos Silva spoke to Defendant James by telephone. Defendant James instructed Detective Silva to refuse to return the camera to Mr. Lima and, in fact, advised that Mr. Lima was to be arrested for refusing to turn over the originals and all duplicates of the photographs. Mr. Lima insisted he had a right to keep copies of his pictures.

30. Detective Silva, concerned that Mr. Lima was being treated unfairly, approached Defendant Latorre – the desk supervisor responsible for the station that night – for advice on how

to handle the situation. Defendant Latorre also spoke with Defendant James by telephone, and Defendant James repeated that Mr. Lima should be arrested.

31. Defendant Latorre then ordered Defendant Alicea to confiscate Mr. Lima's cellular phone, take him to a bench in the station, and watch Mr. Lima to ensure that he did not leave the station. Defendant Alicea complied with the order, and handcuffed Mr. Lima to the bench. Defendant Alicea also confiscated Mr. Lima's cellular phone, as he was ordered to do by Defendant Latorre. Defendant Latorre subsequently spoke with Defendant Demaio by telephone, and Defendant Demaio reiterated that Mr. Lima should be detained at the station. He also informed Defendant Latorre that he was seeking advice from the Essex County Prosecutor's Office, apparently to determine whether he could lawfully arrest Mr. Lima and seize his photographs.

32. Mr. Lima managed to speak by telephone with his friend Augusto Amador, a Newark city councilman. Mr. Amador, in turn, called Defendant McCarthy to appeal for Mr. Lima's release. At that point, or on a call very shortly thereafter, Defendant McCarthy made clear to Mr. Amador that he was aware of the arrest and had discussed it with others in the NPD. Defendant McCarthy advised Mr. Amador that he should encourage Mr. Lima to give up both the originals and duplicates of the photographs so that he could be released.

33. Mr. Amador gained telephone contact with Mr. Lima and convinced him that he ought to comply with the NPD's orders so as to avoid further detention. After approximately 30 minutes in handcuffs, Mr. Lima told the officers he would turn over all of his pictures, and the handcuffs were removed. Mr. Lima's concession was coerced: he knew he had to give up the photographs in order to be released, and desperately wanted to avoid having to spend the night in jail.

34. Defendant James prepared to follow Mr. Lima back to the *Brazilian Voice* office to retrieve the pictures. Mr. Lima remarked to Defendant James that the way the police had treated him that night would discourage people from helping the police in the future. Defendant James told Mr. Lima, "If you didn't know people in certain places, you wouldn't be talking to me like that." Mr. Lima felt intimidated and threatened as a result of this remark. Mr. Lima and his photographer were then followed back to the *Brazilian Voice* office by two police officers, including Defendant James. At the newspaper office, Defendant James seized from Mr. Lima's possession a disk containing the pictures of the scene where the body was discovered.

35. At no point on September 6, 2007 did anyone show Mr. Lima or any of his staff a warrant for the seizure of the camera, his cellular phone, or any photographs, or for his arrest. Mr. Lima was never charged with any crime.

36. After this incident, Mr. Lima arranged to meet with Mayor Cory Booker about the abusive behavior by the Newark Police Department. In an effort to harass and attempt to intimidate Mr. Lima, the NPD had two unmarked police cars take turns parking in front of the office of Mr. Lima's newspaper on the day of his meeting with the mayor. After Chief Demaio and Mayor Booker's office was informed of the harassment, it discontinued.

37. At no point prior to September 6, 2007 were NPD officers properly trained on journalistic freedom issues. NPD officers were also inadequately trained on their obligations to obtain a warrant before conducting arrests and seizing property – particularly when dealing with material witnesses. Likewise, the NPD had not adopted policies necessary to ensure that officers were sufficiently aware of their obligations in these areas. Yet, Defendants McCarthy and John Doe – the NPD officials responsible for all NPD polices, and Defendant John Roe – the NPD

official responsible for officer training, were obligated to ensure that proper training and policies were in effect.

38.     Mr. Lima was considerably shaken by the abusive and intimidating conduct of the Defendants toward himself and his staff.  Attempting to fulfill his civic duty by reporting evidence of a potential crime, and his journalistic duty to consider how this evidence might be of public concern to his readers residing blocks away and to an entire city still reeling from the brutal student shootings that had occurred barely more than one month earlier, Mr. Lima was instead humiliated, belittled, and otherwise treated as a common criminal.

39.     As a result of defendants' actions, Mr. Lima endured extreme distress, humiliation and fear during the several-hour episode, and he suffers considerable emotional distress to this day.  This profound psychological harm he has experienced as a result of defendants' conduct has negatively affected him psychologically, physically, and professionally.

<strong>FIRST CAUSE OF ACTION:<br>VIOLATION OF THE FIRST AMENDMENT TO<br><u>THE UNITED STATES CONSTITUTION</u></strong><br>(Unlawful Interference With and Restraint of Free Speech,<br>Freedom of Expression and Freedom of the Press)

40.     Plaintiff repeats and realleges paragraphs 1 through 39, as if fully set forth herein.

41.     Mr. Lima has a constitutionally protected right under the First Amendment to the United States Constitution to receive and record information and to gather information for later dissemination in a peaceful manner.

42.     By ordering Mr. Lima not to print pictures his newspaper staff had taken, by seizing Mr. Lima's camera and the memory device containing these pictures, by coercing Mr. Lima to turn over the originals and all copies of his pictures, and by seizing pictures in the newspaper office, and/or by ordering and/or affirming the supposed lawfulness of these actions

taken against Mr. Lima, Defendants NPD, McCarthy, Demaio, Latorre, James, Alicea, Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 unlawfully imposed a prior restraint on the photographs Mr. Lima and his staff had taken, in violation of Mr. Lima's freedom of speech, freedom of expression and freedom of the press, as guaranteed by the First Amendment of the United States Constitution.

43.   By failing to properly train NPD officers, and failing to adopt policies necessary to prevent the unlawful actions at issue here, Defendants NPD, McCarthy, Doe, and Roe contributed to the violation of Mr. Lima's First Amendment rights.

44.   By advising the NPD and its officers that Mr. Lima could be arrested for refusing to turn over all of his photographs, and that his photographs could be lawfully seized, Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 also contributed to the violation of Mr. Lima's First Amendment rights.

## SECOND CAUSE OF ACTION:
## VIOLATION OF ARTICLE I, PARAGRAPH 6 OF
## THE NEW JERSEY CONSTITUTION
(Unlawful Interference with and Restraint of Free Speech)

45.   Plaintiff repeats and realleges paragraphs 1 through 44, as if fully set forth herein.

46.   Mr. Lima has a constitutionally protected right under Article I, Paragraph 6 of the New Jersey State Constitution to receive and record information and to gather information for later dissemination.

47.   By ordering Mr. Lima not to print pictures that his newspaper staff had taken, by seizing Mr. Lima's camera containing these pictures, by coercing Mr. Lima to turn over the originals and all copies of his pictures, and by seizing pictures in the newspaper office, and/or by ordering these actions taken against Mr. Lima, Defendants NPD, McCarthy, Demaio, Latorre, James, and Alicea unlawfully imposed a prior restraint on the publication of photographs Mr.

Lima and his staff had taken, in violation of Mr. Lima's freedom of speech, freedom of expression and freedom of the press, as guaranteed by Article I, Paragraph 6 of the New Jersey Constitution.

48. By failing to properly train NPD officers, and failing to adopt policies necessary to prevent the unlawful actions at issue here, the NPD, Defendants McCarthy, Doe, and Roe contributed to the violation of Mr. Lima's rights under Article I, Paragraph 6 of the New Jersey Constitution.

49. By advising the NPD and its officers that Mr. Lima could be arrested for refusing to turn over all of his photographs, and that his photographs could be lawfully seized, Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 also contributed to the unlawful prior restraint, in violation of Mr. Lima's freedom of speech, freedom of expression and freedom of the press, as guaranteed by Article I, Paragraph 6 of the New Jersey Constitution.

### THIRD CAUSE OF ACTION:
### VIOLATION OF THE FOURTH AMENDMENT TO
### THE UNITED STATES CONSTITUTION
(Unlawful Search and Seizure of Personal Property)

50. Plaintiff repeats and realleges paragraphs 1 through 49, as if fully set forth herein.

51. By seizing Mr. Lima's camera, cellular phone, and photographs without a search warrant or other circumstances rendering such seizures reasonable, and/or by ordering these seizures, Defendants NPD, McCarthy, Demaio, Latorre, James, and Alicea violated Mr. Lima's right to be free from unlawful searches and seizures, as guaranteed by the Fourth Amendment of the United States Constitution.

52. By failing to properly train NPD officers, and failing to adopt policies necessary to prevent the unlawful actions at issue here, Defendants NPD, McCarthy, Doe, and Roe contributed to the violation of Mr. Lima's Fourth Amendment rights.

53. By advising the NPD and its officers that Mr. Lima's photographs could be lawfully seized, Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 also contributed to the violation of Mr. Lima's Fourth Amendment rights.

### FOURTH CAUSE OF ACTION:
### VIOLATION OF ARTICLE I, PARAGRAPH 7 OF
### THE NEW JERSEY CONSTITUTION
(Unlawful Search and Seizure of Personal Property)

54. Plaintiff repeats and realleges paragraphs 1 through 53, as if fully set forth herein.

55. By seizing Mr. Lima's camera, cellular phone, and photographs without a search warrant or other circumstances rendering such seizures reasonable, and/or by ordering these seizures, Defendants NPD, McCarthy, Demaio, Latorre, James, and Alicea violated Mr. Lima's right to be free from unlawful searches and seizures, as guaranteed by Article I, Paragraph 7 of the New Jersey Constitution.

56. By failing to properly train NPD officers, and failing to adopt policies necessary to prevent the unlawful actions at issue here, Defendants NPD, McCarthy, Doe, and Roe contributed to the violation of Mr. Lima's rights under Article I, Paragraph 7 of the New Jersey Constitution.

57. By advising the NPD and its officers that Mr. Lima's photographs could be lawfully seized, Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 also contributed to the violation of Mr. Lima's right to be free from unlawful searches and seizures, as guaranteed by Article I, Paragraph 7 of the New Jersey Constitution.

### FIFTH CAUSE OF ACTION
### VIOLATION OF THE FOURTH AMENDMENT OF
### THE UNITED STATES CONSTITUTION
(Unlawful Seizure of the Person)

58. Plaintiff repeats and realleges paragraphs 1 through 57, as if fully set forth herein.

59. Defendants abused the authority granted to them under color of state law and unjustifiably arrested and detained Mr. Lima.

60. Defendants had no warrant and no probable cause to arrest Mr. Lima, nor was Mr. Lima acting in a suspicious or potentially dangerous manner.

61. By arresting Mr. Lima without a warrant and without probable cause for arrest, and/or by ordering or approving this arrest, Defendants NPD, McCarthy, Demaio, James, Latorre, and Alicea violated Mr. Lima's right to be free from unreasonable seizure of his person, as guaranteed by the Fourth Amendment to the United States Constitution.

62. By failing to properly train NPD officers, and failing to adopt policies necessary to prevent the unlawful actions at issue here, Defendants NPD, McCarthy, Doe, and Roe contributed to the violation of Mr. Lima's Fourth Amendment rights.

63. By advising the NPD and its officers that Mr. Lima could be arrested for refusing to turn over all the photographs (*i.e.*, both originals and all duplicates), Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 also contributed to the violation of Mr. Lima's Fourth Amendment rights.

### SIXTH CAUSE OF ACTION
### VIOLATION OF ARTICLE I, PARAGRAPH 7 OF
### THE NEW JERSEY CONSTITUTION
(Unlawful Seizure of the Person)

64. Plaintiff repeats and realleges paragraphs 1 through 63, as if fully set forth herein.

65. Defendants abused the authority granted to them under color of state law and unjustifiably arrested and detained Mr. Lima.

66. Defendants had no warrant and no probable cause to arrest Mr. Lima, nor was Mr. Lima acting in a suspicious or potentially dangerous manner.

67. By arresting Mr. Lima without a warrant and without probable cause for arrest, and/or by ordering or approving his arrest, Defendants NPD, McCarthy, Demaio, James, Latorre, and Alicea violated Mr. Lima's right to be free from unreasonable seizure of his person, as guaranteed by Article I, Paragraph 7 of the New Jersey Constitution.

68. By failing to properly train NPD officers, and failing to adopt policies necessary to prevent the unlawful actions at issue here, Defendants NPD, McCarthy, Doe, and Roe contributed to the violation of Mr. Lima's rights under Article I, Paragraph 7 of the New Jersey Constitution.

69. By advising the NPD and its officers that Mr. Lima could be arrested for refusing to turn over all of the photographs (*i.e.,* both originals and all duplicates), Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 also contributed to the violation of Mr. Lima's rights under Article I, Paragraph 7 of the New Jersey Constitution.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF THE NEW JERSEY REPORTER
### SHIELD LAW, N.J.S.A. § 2A:84A-21.9

70. Plaintiff repeats and realleges paragraphs 1 through 69, as if fully set forth herein.

71. The New Jersey Reporter Shield Law protects "any person, corporation, partnership, proprietorship or other entity engaged on, engaged in, connected with, or otherwise employed in gathering, procuring, transmitting, compiling, editing, publishing, or disseminating news for the public" from being "free from searches and seizures, by State, county and local law enforcement officers with respect to any documentary materials obtained in the course of pursuing the aforesaid activities whether or not such material has been or will be disseminated or published." N.J.S.A. § 2A:84A-21.9.

72. Mr. Lima, as the editor of the *Brazilian Voice*, was at all times described in this Complaint engaged in disseminating news for the public.

73. Mr. Lima's photographs were taken by a photographer on the *Brazilian Voice* staff in the course of reporting a story for the newspaper.

74. Because Mr. Lima was "engaged in . . . gathering, procuring, transmitting, compiling, editing, publishing, or disseminating news for the public," and the photographs of the dead body his staff discovered on September 6, 2007, were "documentary materials obtained in the course of pursuing" Mr. Lima's journalistic activities, New Jersey law protects Mr. Lima from "searches and seizures, by State, county and local law enforcement officers with respect to" these materials.

75. By seizing Mr. Lima's camera and photographs and/or ordering these seizures, Defendants NPD, McCarthy, Demaio, James, and Alicea violated Mr. Lima's rights under the New Jersey Reporter's Shield Law, N.J.S.A. § 2A:84A-21.9.

76. By failing to properly train NPD officers, and failing to adopt policies necessary to prevent the unlawful conduct at issue here, Defendants NPD, McCarthy, Doe, and Roe contributed to the violation of Mr. Lima's rights under N.J.S.A. § 2A:84A-21.9.

77. By advising the NPD and its officers that they could lawfully arrest Mr. Lima for refusing to turn over all of the photographs (*i.e.*, both originals and all duplicates), and that they could lawfully confiscate his photographs, Defendants Brewington, Carter, Imhof, Sukhdeo, and Loe 1 through 4 also contributed to the violation of Mr. Lima's rights under N.J.S.A. § 2A:84A-21.9.

78. Mr. Lima's cause of action for this claim arises under the New Jersey Civil Rights Act, which authorizes "[a]ny person who has been deprived of . . . any substantive rights,

privileges or immunities secured by the Constitution or laws of this State . . . by threats, intimidation or coercion by a person acting under color of law," to bring a civil action for damages or other relief. N.J.S.A. § 10:6-2(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants as follows:

(a) Compensatory and consequential damages in an amount to be determined at trial;

(b) Punitive damages on all claims allowed by law, in an amount to be determined at trial;

(c) Attorney's fees and costs associated with this action;

(d) Any further relief as this Court deems just and proper and any other relief as allowed by law.

Plaintiff demands a trial by jury.

SETON HALL UNIVERSITY SCHOOL OF LAW
CENTER FOR SOCIAL JUSTICE
833 McCarter Highway
Newark, NJ 07102
(973) 642-8700

By:   /s/ Emily Goldberg
Emily B. Goldberg, Esq. (EG8413)
Baher Azmy, Esq.

Edward Barocas, Esq. (EB 8251)
AMERICAN CIVIL LIBERTIES UNION
OF NEW JERSEY
P.O. Box 32159
89 Market Street, 7th Floor
Newark, NJ 07101
(973) 642-2084

*Attorneys for Plaintiff*

Dated: December 2, 2008
Newark, New Jersey